UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60655-CIV-COHN/SELTZER

JPMORGAN CHASE BANK, N.A. and
CHASE HOME FINANCE, LLC,

    Plaintiffs,

vs.

BEN-EZRA & KATZ, P.A.,

    Defendant.
_____/

**ORDER DIRECTING POSTING OF SURETY BOND AND RETURN OF FILES**

**THIS CAUSE** is before the Court upon Plaintiffs' Emergency Memorandum in Support of Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction [DE 3], Plaintiff's Complaint [DE 1], Defendant's Amended Response [DE 9], Defendant's Affidavit and Declaration [DE's 10 and 11], and Plaintiffs' Reply [DE 12]. The Court has carefully considered all of the filings and exhibits, the arguments of counsel made at today's hearing, and is otherwise fully advised in the premises.

**I.  BACKGROUND**

Plaintiffs JP Morgan Chase Bank, N.A. and Chase Home Finance, LLC ("Plaintiffs"), are banks engaged in home mortgage finance who have engaged Defendant Ben-Ezra & Katz, P.A. ("Defendant"), a law firm, to litigate foreclosure actions on Plaintiffs' behalf in state courts.  The parties entered a Master Services Agreement on February 1, 2009 (Exhibit A to Complaint) (hereinafter "Agreement") and an Attorney - Trustee Schedule to the Agreement (Exhibit B to Complaint) (hereinafter "Schedule") that govern their attorney-client relationship.

Plaintiffs terminated Defendant by letter dated March 9, 2011 (Exhibit C to Complaint). Plaintiffs' termination letter did not discuss any reason for the termination. The letter requested Defendant's cooperation in transferring the foreclosure litigation files from Defendant to an unidentified "new firm." Plaintiffs allege by affidavit that they have made repeated demands upon Defendant to immediately return the files pursuant to the Agreement and Schedule. Affidavit of Chad Prelog ¶ 14 [DE 6-1]. Plaintiffs further allege that Defendant refuses to release the files because of disputed amounts of fees the law firm is owed. Id. ¶ 15. The same day it was terminated, Defendant provided Plaintiffs with a letter outlining the file transfer process, but no agreement has been reached. Exhibit 1 to Defendant's Amended Response [DE 9-1]. Defendant has not transferred any files to date.

On March 25, 2011, Plaintiffs filed this action for breach of contract (specific performance), replevin and conversion against Defendant for its failure to turn over the files. Plaintiffs alleges that the value of the properties to which the files pertain is over $40 million, thus satisfying diversity jurisdiction.[1] Plaintiff moved for immediate relief in the form of a temporary restraining order requiring Defendant to turn over the files. Plaintiff offers to post security in the amount of $2.8 million, alleging that additional security in the amount has been posted by Fannie Mae in connection with a state court action brought by Fannie Mae against Defendant in state circuit court. Defendant opposes the relief sought because it asserts that it has not breached the Agreement, and because Florida law gives it the right to a retaining lien on the legal work done and

---

[1] In its initial Memorandum, Plaintiffs use the figure of $400 million [DE 3, p. 2], but in its Reply the figure is $40 million [DE 12, p.1]. Either way, the minimum amount in controversy as measured by the value of the property at issue in this injunction action is satisfied.

costs incurred.

## II.  LEGAL STANDARD

### A.  Preliminary Injunction Standard

In order to obtain a preliminary injunction, Star-Brite must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendants; and (4) granting the preliminary injunction will not disserve the public interest.  Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir.1994).  Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." Id. (quoting Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990)); see also McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998).[2]

### B.   Agreement and Schedule

In its papers, Plaintiffs rely upon Section 2.6(c) of the Agreement and Section II.B of the Schedule to establish its substantial likelihood of success on its breach of contract claim that Defendant breached its obligation to return the files as part of its

---

[2] To obtain the additional relief of an *ex parte* temporary restraining order ("TRO") pursuant to Rule 65(b), a plaintiff must meet the preliminary injunction standard plus provide specific facts in an affidavit that clearly show that immediate or irreparable injury will result to the movant before the adverse party can be heard in opposition, and, certify in writing any efforts made to give notice and the reasons why it should not be required.  Although one was requested in its initial papers, Plaintiffs have not attempted to meet this TRO standard.

Transition Services responsibility. Plaintiffs also argue that Section 13.2 of the Agreement states that if Defendant breaches its obligation to provide Transition Services, then irreparable harm is proven automatically. Plaintiffs note that the files at issue relate to thousands of foreclosure actions they are presently pursuing, and Plaintiffs need those files to respond to court or homeowner actions.

Defendant notes that the Agreement and Schedule have termination provisions which require 30 days notice of termination, or in the case of a "for cause" termination, an opportunity to cure within 30 days. Agreement §§ 2.2 and 2.3. The termination letter in this case gives no reasons for termination, thus implying that the termination is "for Convenience" and governed by § 2.3 of the Agreement, which requires 30 days notice. Thus, Defendant contends that its obligation to provide Transition Services under § 2.6 does not arise until April 8, 2011, and it cannot be in breach of an obligation that is not ripe. Defendant also argues that there is no irreparable harm to Plaintiffs. At the motion hearing held before the Court, Plaintiffs were unable to state with specificity what provision of the parties' Agreement and Schedule entitle them to immediate delivery of the files. Rather, Plaintiffs rely upon common law that an attorney cannot retain property belonging to a client after termination of the attorney-client relationship.[3]

### B. Retaining Lien

Defendant asserts a common law attorney retaining lien under Florida law to hold the files until Plaintiffs pay for legal work done or Plaintiffs post security for the

---

[3] The "property" in this case are original notes and mortgages held by Plaintiffs that are in the possession of Defendant, their counsel in the foreclosure actions.

outstanding legal fees and costs.[4]  Defendant does not dispute that it has an obligation to transfer the files if adequate security is posted for the value of the legal work performed.  Both parties conceded that if the Court ordered sufficient security for the legal work performed, that the files would be transferred immediately.  The parties dispute the amount of the bond.

Defendant alleges that the outstanding fees and costs total $6,175,515.84, though it acknowledges that only a small portion of that amount has actually been invoiced.  Affidavit of Deborah C. Foster ¶¶ 5-9 [DE 10-1].  Defendant contends Plaintiffs must post a bond for the total amount.  Plaintiffs assert that they only have to post a bond for invoices received, because the Agreement and Schedule afford Plaintiffs a process by which they review the bills and can seek adjustments to the amount owed.

Florida law states that "a retaining lien covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney."  Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561 (Fla. 1986).  Plaintiffs argue that the term "balance due" limits the lien to bills invoiced and "due" to be paid.  However, because the "balance due" covers "all legal work done," this Court will not limit the bond to just invoices.  There is no dispute that Defendant provided substantial amounts of legal work to Plaintiffs over the past few months.  As Defendant points out, this Court is not ordering Plaintiffs to pay for work not

---

[4] The Agreement has a venue and choice of law clause that states that New York law governs the Agreement, and, that all actions are to be exclusively brought in New York state or federal courts.  Agreement § 13.4.  However, there is an exception for those actions seeking equitable relief, such as this action.  Neither party raises New York law in addressing the attorney lien issue.

billed, just to post security for legal work that has already been performed pursuant to a valid contract.  Plaintiffs retain all rights under the Agreement and Schedule to dispute portions of the forthcoming bills under the processes outlined in those binding contracts.

The only issue for the Court to decide is the amount of security that Plaintiffs must post before Defendant returns the files.  Plaintiff proposes an amount limited to just the total of outstanding invoices, though it acknowledges that it stated in its initial papers that it offered a bond of $2.8 million.[5]  Defendant seeks a bond in the full amount of the legal work done, but not yet billed.

The Court concludes that a reasonable amount of security for the legal work performed is $4 million.  Defendant is entitled to a retaining lien under Florida law for undisputed amounts greater than just those amounts actually invoiced, particularly in a case where there appears to be no dispute that Defendant in fact has performed substantial additional legal work on the thousands of files in question.  At the same time, given the invoice review process that is part of the contract between the parties, there is a substantial likelihood that the total amount ultimately to be paid will not be 100% of the invoiced amounts.  While the Court takes no position on what amounts are owed or will be owed, a bond in the amount of $4 million is appropriate in this action.[6]

---

[5] Defendant stated, without apparent opposition, that the bond posted by Fannie Mae in the state court case between Defendant and Fannie Mae is limited to legal work done on Fannie Mae files, which is separate from work done on Plaintiffs' files.

[6] The plain language of § 13.4 of the Agreement appears to mean that disputes regarding what monies are owed would not be heard by this Court.

### III.  CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Upon the posting of a surety bond in the amount of $4 million by Plaintiffs, Defendant Ben-Ezra & Katz, P.A. shall immediately transfer the foreclosure action files to Plaintiffs;

2. A condition of the bond shall be that undisputed invoices can be drawn down from the bond;

3. Any disputes regarding payment shall be governed by the Agreement and Schedule;

4. Plaintiffs are responsible for copying costs for a copy of case files to be retained by Defendant;

5. Plaintiffs shall file substitutions of counsel in the underlying foreclosure cases by May 2, 2011;

6. Plaintiffs' Emergency Memorandum in Support of Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction [DE 3] is **DENIED as moot**, given the relief contained in this order.

7. The parties shall submit a status report to the Court by April 15, 2011, regarding the status of this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 1st day of April, 2011.

_____
JAMES I. COHN
United States District Judge

copies to:
counsel of record on CM/ECF